Caryn Schechtman
Megan Shea Harwick
DLA PIPER US LLP
1251 Avenue of the Americas
New York, New York  10020
(212) 335-4500

Attorneys for Defendant Barron Partners LP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------x
                                          :
CANEUM, INC.,                             :
                                          :  07-CV-7354 (LAK)
                 Plaintiff,               :
                                          :  ANSWER AND
        -v-                               :  COUNTERCLAIMS
                                          :
BARRON PARTNERS LP, et al.,               :
                                          :
                 Defendants.              :
                                          :
-------------------------------------------------------------------x
```

Defendant Barron Partners LP ("Barron"), by its attorneys DLA Piper US LLP, answers the First Amended Complaint ("Amended Complaint") to the best of its knowledge and upon information and belief based on the investigation that it has completed at this time and as follows:

1.      Barron denies the allegations contained in Paragraph 1 of the Amended Complaint; except denies knowledge or information sufficient to form a belief as to whether Caneum was a "young, growing company with a thinly traded stock."

2.     Barron admits that it entered into a Preferred Stock Purchase Agreement with Caneum effective March 24, 2006 (the "SPA") and refers to the SPA for the terms and provisions thereof.

3.     Barron admits that it is a reputable firm and represented itself as a reputable firm. Barron denies the remaining allegations contained in Paragraph 3 of the Amended Complaint.

4.     Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Amended Complaint to the extent those allegations concern what Caneum believed was the principal purpose of the SPA.  Barron admits that it was aware that Caneum intended to use the $2,000,000 of funds received from Barron to grow its company.

5.     Barron denies the allegations contained in Paragraph 5 of the Amended Complaint.  Barron further states that the allegations contained in the second sentence of Paragraph 5 are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies the allegations contained in the second sentence of Paragraph 5 of the Amended Complaint.

6.     Barron denies the allegations contained in the first two sentences of Paragraph 6 of the Amended Complaint.  The allegations contained in the last sentence of Paragraph 6 are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies the allegations contained in the last sentence of Paragraph 6 of the Amended Complaint.

7.     Barron denies the allegations contained in Paragraph 7 of the Amended Complaint except admits that it claims that Caneum failed to meet certain earnings targets

required by the SPA and, as a result, Caneum owes Barron additional shares under the SPA.
Barron further states that it informed Caneum of its position and it seeks to recover the additional
shares owed by Caneum by and through its Counterclaims against Caneum.

THE PARTIES

8.    Barron denies knowledge or information sufficient to form a belief as to the truth
of the allegations contained in Paragraph 8 of the Amended Complaint.

9.    Barron admits the allegations contained in Paragraph 9 of the Amended
Complaint.

10.    Barron admits that it has one general partner, Barron Capital Advisors, LLC
("BCA").  Barron denies knowledge or information sufficient to form a belief as to the truth of
the allegations contained in the second sentence of Paragraph 10 of the Amended Complaint.
The allegations contained in the last sentence of Paragraph 10 of the Amended Complaint are
conclusions of law, not averments of fact, to which no response is required; to the extent a
response is required, Barron denies the allegations contained in the last sentence of Paragraph 10
of the Amended Complaint.

11.    Barron admits that BCA is a Delaware limited liability company with its principal
place of business in New York, New York.  Barron further admits that Andrew Worden is the
managing member of BCA and that Mr. Worden resides in New York.  The allegations
contained in the last sentence of Paragraph 11 of the Amended Complaint are conclusions of law,
not averments of fact, to which no response is required; to the extent a response is required,
Barron denies the allegation contained in the last sentence of Paragraph 11 of the Amended
Complaint.

3

12.     The allegations in Paragraph 12 of the Amended Complaint are not directed to Barron and accordingly, no response is required.

<u>JURISDICTION</u>

13.     The allegations in Paragraph 13 of the Amended Complaint are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies the allegations contained in Paragraph 13 of the Amended Complaint.

14.     The allegations in Paragraph 14 of the Amended Complaint are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron admits the allegations contained in Paragraph 14 of the Amended Complaint.

<u>STATEMENT OF FACTS</u>

15.     Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Amended Complaint.

16.     Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Amended Complaint.

17.     Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Amended Complaint.

18.     Barron admits that negotiations of the SPA with Caneum began in or around December 2005 and that Barron invested cash in Caneum in consideration for shares of Caneum preferred stock and warrants.

A.      <u>The Financing Transaction</u>

19.     Barron admits the allegations contained in Paragraph 19 of the Amended Complaint.

4

20.     Barron admits that the parties executed the SPA on March 24, 2006 and refers to the SPA for the terms and provisions thereof.

21.     Barron admits that the SPA and the Registration Rights Agreement set forth rights and obligations of the parties and that the body of the SPA (excluding exhibits) is attached to the Amended Complaint as Exhibit 1.

22.     Barron admits that at the time it entered into the SPA, there were 5,966,611 shares of Caneum's common stock outstanding. Barron further admits that pursuant to the SPA, it paid $2,000,000 in cash for 4,000,000 convertible preferred shares and warrants to purchase up to 8,000,000 shares of Caneum common stock at cash exercise prices ranging from $0.50 to $1.50 per share. Barron denies the remaining allegations of Paragraph 22 of the Amended Complaint.

23.     Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 23 of the Amended Complaint. Barron denies the allegations contained in the second sentence of Paragraph 23 except admits that the SPA contains certain restrictions on Barron's ownership of its Caneum stock and refers to the SPA for the terms and provisions thereof.

24.     The allegations contained in Paragraph 24 of the Amended Complaint purport to restate, characterize and interpret the SPA, the contents of which speak for themselves. To the extent that the allegations in Paragraph 24 differ in words, meaning, effect or implication from the SPA, Barron denies those allegations and refers to the SPA for the terms and provisions thereof.

25.     The allegations contained in Paragraph 25 of the Amended Complaint purport to restate, characterize and interpret the SPA, the contents of which speak for themselves. To the

extent that the allegations in Paragraph 25 differ in words, meaning, effect or implication from the SPA, Barron denies those allegations and refers to the SPA for the terms and provisions thereof.

26.    Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Amended Complaint to the extent those allegations concern Caneum's state of mind and/or its motivations in connection with its negotiation of the SPA with Barron or its characterization of trading volume and concerns about large shareholders. The remaining allegations contained in Paragraph 26 of the Amended Complaint purport to restate, characterize and interpret the SPA, the contents of which speak for themselves. To the extent that the allegations in Paragraph 26 differ in words, meaning, effect or implication from the SPA, Barron denies those allegations and refers to the SPA for the terms and provisions thereof.

27.    Barron admits that the parties executed the SPA on March 24, 2006. Barron denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of the Amended Complaint.

28.    Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Amended Complaint except admits that it was aware of Caneum's publicly available announcements after they were released by Caneum to the public. Barron denies the allegations contained in the last sentence of Paragraph 28.

29.    Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Amended Complaint.

30.     Barron denies the allegations contained in Paragraph 30 of the Amended
Complaint.  Barron denies knowledge or information sufficient to form a belief as to the truth of
the allegation that "Caneum was repeatedly listed on the NASDAQ Regulation SHO Threshold
Security List."  Barron further denies knowledge or information sufficient to form a belief as to
the truth of the allegations concerning any conversation that Mark Jensen allegedly had with
Caneum except denies any such "admissions" alleged to have been made therein.

31.     Barron admits the allegations contained in the first three sentences of  Paragraph
31 of the Amended Complaint.  Barron denies the remaining allegations contained in Paragraph
31 of the Amended Complaint.

32.     Barron denies the allegations contained in Paragraph 32 of the Amended
Complaint.

33.     Barron denies the allegations contained in the first two sentences of Paragraph 33
of the Amended Complaint and all allegations that it engaged in a "massive sell-off."  Barron
denies knowledge or information sufficient to form a belief as to the truth of the remaining
allegations contained in Paragraph 33 of the Amended Complaint.

34.     Barron denies the allegations contained in Paragraph 34 of the Amended
Complaint and notes that the allegations contained in Paragraph 34 purport to restate,
characterize and interpret a magazine article, the contents of which speak for themselves.

35.     Barron denies the allegations contained in the first sentence of Paragraph 35 of
the Amended Complaint except admits that Caneum's stock price declined during the last days
of December 2006.  The allegations contained in the last sentence of Paragraph 35 are

conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies those allegations.

36.     Barron denies the allegations contained in Paragraph 36 of the Amended Complaint except admits that it has not exercised any warrants to purchase Caneum common shares since December 2006.

37.     Barron denies the allegations contained in the first sentence of Paragraph 37 of the Amended Complaint.  Barron denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of Paragraph 37. Barron admits that Caneum approached Barron to inquire whether it would be interested in selling its remaining warrants, but states that Caneum never presented Barron with a bona fide offer or a credible buyer.  Barron denies the allegations contained in the last sentence of Paragraph 37 of the Amended Complaint.

38.     Barron denies the allegations contained in Paragraph 38 of the Amended Complaint.

39.     Barron admits that on July 20, 2007, it sent an e-mail to Caneum regarding Caneum's 2006 Adjusted EBITDA calculation ("Barron's July 20 E-mail").  The remaining allegations contained in Paragraph 39 of the Amended Complaint purport to restate, characterize and interpret Barron's July 20 E-Mail, the contents of which speak for themselves.  To the extent that the allegations in Paragraph 39 differ in words, meaning, effect or implication from Barron's July 20 E-mail, Barron denies those allegations.

40.     Barron admits that on July 20, 2007, it received an e-mail from Caneum regarding Caneum's Adjusted EBITDA for the year ended December 31, 2006 ("Caneum's July 20 E-

mail"). The remaining allegations contained in Paragraph 40 of the Amended Complaint purport to restate, characterize and interpret Caneum's July 20 E-mail, the contents of which speak for themselves. To the extent that the allegations in Paragraph 40 differ in words, meaning, effect or implication from Caneum's July 20 E-mail, Barron denies those allegations.

41.    Barron admits that on July 24, 2007, Caneum provided Barron with Caneum's calculation of its Adjusted EBITDA for the year ended December 31, 2006 ("Caneum's July 24 E-mail"). The remaining allegations of Paragraph 41 of the Amended Complaint purport to restate, characterize and interpret Caneum's July 24 E-mail and the SPA, the contents of which speak for themselves. To the extent that the allegations in Paragraph 41 differ in words, meaning, effect or implication from Caneum's July 24 E-mail and/or the SPA, Barron denies those allegations.

42.    Barron admits that on July 27, 2007, it provided Caneum with Barron's calculation of Caneum's Adjusted EBITDA for the year ended December 31, 2006 ("Barron's July 27 E-mail"). The remaining allegations of Paragraph 42 of the Amended Complaint purport to restate, characterize and interpret Barron's July 27 E-mail, the contents of which speak for themselves. To the extent that the allegations in Paragraph 42 differ in words, meaning, effect or implication from Barron's July 24 E-mail, Barron denies those allegations.

43.    Barron denies the allegations contained in the first sentence of Paragraph 43 of the Amended Complaint except admits that the parties disagree as to the proper method of calculating Adjusted EBITDA under the SPA. The allegations contained in the second sentence of Paragraph 43 purport to restate, characterize and interpret the SPA, the contents of which speak for themselves. To the extent that the allegations contained in the second sentence of

Paragraph 43 differ in words, meaning, effect or implication from the SPA, Barron denies those allegations. Barron denies the allegations contained in the last sentence of Paragraph 43 of the Amended Complaint.

44.     Barron admits that at the time the parties negotiated the SPA, it was aware of Caneum's intent to acquire certain companies, including TireOne and Continuum Systems. Barron denies the remaining allegations contained in Paragraph 44 of the Amended Complaint.

<u>COUNT ONE</u>
(Breach of Contract)

45.     Barron repeats and incorporates by reference the answers to paragraphs 1 through 44 of the Amended Complaint as if fully set forth herein.

46.     Barron denies the allegations contained in Paragraph 46 of the Amended Complaint.

47.     Barron denies the allegations contained in Paragraph 47 of the Amended Complaint.

48.     Barron denies the allegations contained in Paragraph 48 of the Amended Complaint and states that no notice of breach of the SPA was ever given to Barron.

49.     Barron denies the allegations contained in Paragraph 49 of the Amended Complaint.

50.     Barron denies the allegations contained in Paragraph 50 of the Amended Complaint.

51.     Barron denies the allegations contained in Paragraph 51 of the Amended Complaint.

<u>COUNT TWO</u>
(Declaratory Relief)

52.     Barron repeats and incorporates by reference the answers to paragraphs 1 through 51 of the Amended Complaint as if fully set forth herein.

53.     Barron admits that the parties disagree as to whether Barron is entitled to additional shares under the SPA.  The remaining allegations contained in Paragraph 53 of the Amended Complaint are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies the allegations contained in Paragraph 53 of the Amended Complaint.

54.     The allegations contained in Paragraph 54 of the Amended Complaint are conclusions of law, not averments of fact, to which no response is required; to the extent a response is required, Barron denies the allegations contained in Paragraph 54 of the Amended Complaint.

<u>COUNT THREE</u>
(Appointment of a Receiver)

55.     Barron repeats and incorporates by reference the answers to paragraphs 1 through 54 of the Amended Complaint as if fully set forth herein.

56.     Barron denies the allegations contained in Paragraph 56 of the Amended Complaint.

57.     Barron denies the allegations contained in Paragraph 57 of the Amended Complaint.

58.     Barron denies the allegations contained in Paragraph 58 of the Amended Complaint.

59.    Barron denies the allegations contained in Paragraph 59 of the Amended Complaint.

## PRAYER FOR RELIEF

Barron denies the allegations contained in Caneum's prayer for relief and further denies that Caneum is entitled to any relief whatsoever.

******************

Barron reserves its right to amend its Answer based upon its continued investigation into this matter and the allegations pled in the Amended Complaint.

## AFFIRMATIVE DEFENSES

1.    Caneum's claims are barred, in whole or in part, because they fail to state a claim upon which relief may be granted.

2.    Caneum's claims are barred, in whole or in part, because all of Barron's actions were consistent with law and with any of Barron's contractual rights and obligations.

3.    Caneum's claims are barred, in whole or in part, by reason of Caneum's own wrongful conduct and breaches of the SPA.

4.    Caneum's claims are barred, in whole or in part, by reason that all alleged damages, if any, were proximately caused by Caneum and/or parties other than Barron.

5.    Caneum's claims are barred, in whole or in part, because any increase or decrease in the market value of shares of Caneum securities was the result of market or other factors and not the alleged wrongful conduct on the part of Barron.

6.    Caneum's claims are barred, in whole or in part, by the doctrine of waiver.

7.    Caneum's claims are barred, in whole or in part, by the doctrine of estoppel.

8.      Caneum's claims are barred, in whole or in part, by the doctrine of laches.

9.      Caneum's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

10.     Caneum's claims are barred, in whole or in part, by Caneum's unclean hands and inequitable conduct.

11.     Caneum's claims are barred, in whole or in part, because Barron acted in good faith at all material times and did not directly or indirectly induce the acts constituting the alleged grounds for relief.

12.     Barron hereby gives notice that it intends to rely on any additional affirmative defenses that become available or apparent during discovery and thus reserves the right to amend its Answer to assert such additional defenses.

Wherefore, for the reasons set forth above and other reasons that may be adduced during discovery in this case, Barron respectfully requests that Caneum take nothing by its Amended Complaint, an award of its costs, attorneys fees and such other relief as the Court deems just and proper under the circumstances.

## COUNTERCLAIMS

Counterclaim-plaintiff Barron Partners LP ("Barron"), by and through its counsel, DLA Piper US LLP, for its counterclaims against Caneum, Inc. ("Caneum") alleges upon knowledge with respect to itself and its own acts and upon information and belief as to all other matters, as follows:

The Parties and Jurisdiction

1.      Counterclaimant Barron Partners LP ("Barron") is a Delaware limited partnership with its principal place of business in New York, New York. At all relevant times, Barron was authorized to conduct business in New York.

2.      Upon information and belief, counterclaim defendant Caneum, Inc. ("Caneum") is a Nevada corporation with its principal place of business in Newport Beach, California.

3.      This Court has subject matter jurisdiction over this action because the parties are diverse and because the amount in controversy exceeds $75,000.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2). A substantial part of the events giving rise to the claim occurred in this district.

5.      The parties have consented to this Court's jurisdiction as set forth in Article 11.10 of the SPA ("Exclusive jurisdiction and venue . . . shall be the Federal Courts serving the State of New York").

FACTUAL BACKGROUND

The Preferred Stock Purchase Agreement

6.      On March 24, 2006, Barron entered into a Preferred Stock Purchase Agreement with Caneum (the "SPA"). Pursuant to the SPA, Barron paid Caneum $2,000,000 in cash for 4,000,000 shares of Caneum Series A Preferred Stock, which are convertible into shares of Caneum common stock at $0.50 per share on a share-for-share basis. Barron also received 4,000,000 A Warrants exercisable at $0.50 per share; 2,000,000 B Warrants exercisable at $1.00 per share; and 2,000,000 C Warrants exercisable at $1.50 per share. The conversion prices and Warrant exercise prices were predicated upon Caneum's projected Adjusted EBITDA.

14

7.    The SPA also provided that if Caneum failed to achieve its projected Adjusted EBITDA for 2006 and 2007, Caneum would issue additional Series A Preferred Stock to Barron not to exceed 2,600,000 shares to more properly reflect the value of Caneum.

8.    In particular, Article 6.15 of the SPA provides that if Caneum's Adjusted EBITDA for the year ended December 31, 2006 was "less than $0.04 per share on a fully-diluted basis," then Caneum would issue to Barron additional preferred shares based on the number of preferred shares Barron owned "on the Calculation Date," which is defined as "the fifth business day following the initial filing date of the Company's Form 10-KSB."

9.    If Caneum's Adjusted EBITDA for the year ended December 31, 2006 was below $0.028 per share then Caneum was required to issue to Barron 1,720,000 shares of preferred stock.  In accordance with the SPA, Caneum was required to issue the additional preferred shares owed to Barron within five business days of the audited numbers being reported to the Securities and Exchange Commission (the "SEC").

10.    To take into account the fact that Caneum intended to make certain acquisitions during 2006 and to facilitate Caneum's ability to meet its EBITDA requirements under the SPA, Article 1.3.3 of the SPA defines Adjusted EBITDA to mean "earnings before interest, taxes, depreciation, and amortization," and requires an adjustment "to add back into earnings," among other things, "all cash and non-cash expenses associated with individual M&A transactions . . . including any non-cash charges associated with the Barron financing transaction (including, but not limited to, those that may be assessed against the convertible preferred stock and warrants and any due diligence fees) and also including the Ascendiant fees, for the calendar years 2006 and 2007."

11.     On July 3, 2007, Caneum filed with the SEC its Form 10-KSB for the year ended December 31, 2006.

12.     On July 20, 2007, Barron asked Caneum to provide it with Caneum's 2006 Adjusted EBITDA as defined by the SPA.

13.     On July 24, 2007, Caneum provided Barron with its calculation of its Adjusted EBITDA for the year ended December 31, 2006. Caneum calculated that its Adjusted EBITDA was $0.07 per share. Based on that calculation, Caneum concluded that no additional shares were due and owing to Barron under Article 6.15 of the SPA since Caneum exceeded the SPA's $0.04 per share benchmark.

14.     As part of its calculation of Adjusted EBITDA, Caneum properly added back into its earnings, the legal and accounting expenses and due diligence fees associated with acquisitions conducted during 2006. Caneum, however, improperly added back into its earnings, a non-expense item, being the cash paid to acquire certain companies, as well as its calculation of management time spent in connection with the acquisitions, and other questionable charges that Caneum associated with those acquisitions.

15.     On July 27, 2007, Barron informed Caneum that it disagreed with Caneum's Adjusted EBITDA calculation and it provided Caneum with its calculation of Caneum's Adjusted EBITDA for the year ended December 31, 2006.

16.     Based on Barron's calculations, Caneum's Adjusted EBITDA was $0.01 per share - - well under the $0.04 benchmark set forth in the SPA.

17.     In accordance with the SPA, Barron calculated Caneum's Adjusted EBITDA to add back into Caneum's earnings, the legal and accounting expenses and due diligence fees associated with Caneum's acquisitions conducted during 2006.

18.     Unlike Caneum's calculation, and in accordance with the SPA, Barron did not add back into Caneum's earnings, the amounts paid by Caneum to acquire certain companies, or the time supposedly spent by management in connection with the acquisitions or the other questionable charges supposedly associated with Caneum's acquisitions.

19.     Pursuant to Article 6.15 of the SPA, since Caneum's Adjusted EBITDA for the year ended December 31, 2006 was $0.01 per share, Caneum was required to issue to Barron 1,720,000 preferred shares.

20.     To date, Caneum has refused to issue these shares to Barron.

The Registration Rights Agreement

21.     In connection with the closing of the SPA on March 24, 2006, the parties entered into a Registration Rights Agreement. Pursuant to the Registration Rights Agreement, Caneum was obligated to register the common shares issuable upon conversion of the outstanding shares of the Series A Preferred Stock and the common shares issuable upon exercise of the warrants held by Barron. Caneum was also required to maintain the effectiveness of the registration statement and to file a post-effective amendment to the registration statement within fifteen trading days after the registration statement is required to be amended.

22.     Article 2.8 of the Registration Rights Agreement further provides that if Caneum fails to maintain the effectiveness of the registration statement during the period commencing six months after March 24, 2006 through two years from such date, Caneum was required to pay

liquidated damages to Barron equal to 30,000 shares of common stock for each thirty-day period, or portion thereof, during which the registration statement is not effective, up to 240,000 shares.

23.     Although Caneum filed the registration statement for the commons shares issuable upon conversion of the outstanding shares of the Series A Preferred Stock and the common shares issuable upon exercise of the warrants held by Barron within the six month requirement and it was declared effective by the SEC on July 5, 2006, the registration statement lost its effectiveness as of April 1, 2007 and has been stale for a total of 206 days.

24.     Accordingly, under Article 2.8 of the Registration Rights Agreement, Caneum owes Barron 30,000 shares for every 30-day period that the registration statement has been ineffective, which to date amounts to approximately 210,000 shares.

25.     Caneum has acknowledged its failure to maintain the effectiveness of the registration statement, but has not issued to Barron any of the shares it owes under Article 2.8 of the Registration Rights Agreement.

Caneum's Failure To Timely Report To The SEC

26.     Pursuant to Article 6.4 of the SPA, Caneum was obligated to report to the SEC and to use its best efforts to comply with all reporting and filing obligations under the Securities Act of 1934.

27.     At the time the parties entered into the SPA, Caneum was listed on the OTC Bulletin Board (the "OTCBB").  The OTCBB is an electronic inter-dealer quotation system that reflects market-maker interest in OTCBB-eligible securities, including real time bid and ask quotes, last-sales prices, and volume information that is governed by the Financial Industry Regulatory Authority and various SEC rules designed to provide investor protection.

28.    To maintain eligibility for listing on the OTCBB, a company must be current in its filing of periodic reports with the SEC.

29.    If a company fails to file its required reports with the SEC, the company will be de-listed from the OTCBB and, in most cases, dropped to an electronic quotation system known as the "Pink Sheets."

30.    The Pink Sheets do not require companies whose securities are quoted on its systems to meet any listing requirements and many of the companies listed on the Pink Sheets do not file periodic reports with the SEC.  As a result, it is difficult for investors to find current, reliable information about companies quoted through the Pink Sheets.  In addition, market makers are limited and there is little or no coverage of the securities by analysts and registered investment advisors.  Many securities brokerage firms will not buy or sell Pink Sheets-listed securities for their clients.

31.    In short, when a company slips from the OTCBB to the Pink Sheets because of a failure to file required reports with the SEC, their securities can still be traded, but the volume will inevitably evaporate because, among other reasons, investors can no longer keep track of the stock to obtain reliable information about the company, or effect trades through their regular brokers.

32.    On April 2, 2007, Caneum notified the SEC of its inability to timely file its required Form 10-KSB for the period ended December 31, 2006.  Caneum did not file this required report until July 3, 2007.

33.    On May 15, 2007, Caneum notified the SEC of its inability to timely file its required Form 10-QSB for the period ended March 31, 2007.  Caneum did not file this required report until August 21, 2007.

34.    On August 15, 2007, Caneum notified the SEC of its inability to timely file its required Form 10-QSB for the period ended June 30, 2007.  Caneum did not file this required report until September 10, 2007.

35.    As a result of its failure to timely file required reports with the SEC, Caneum was de-listed from the OTCBB and dropped to the Pink Sheets.

36.    Since Caneum has been on the Pink Sheets, Barron has lost its ability to sell its shares due to decreased liquidity of Caneum stock.

37.    A principal purpose of the SPA's requirement that Caneum keep current on filing its required periodic reports to the SEC was to provide Barron with the liquidity for its shares afforded by the OTCBB listing.  Caneum's repeated and knowing failures to file required reports with the SEC has deprived Barron the liquidity it bargained for in the SPA and has left Barron holding stock for which there is substantially no market.

First Claim For Relief<br>(Breach of Contract)

38.    Barron repeats and realleges the allegations contained in Paragraphs 1 through 37 as if set forth fully herein.

39.    Barron has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the SPA.

40.     As set forth above, Article 6.15 of the SPA requires Caneum to issue additional preferred shares to Barron if Caneum's Adjusted EBITDA for the year ended December 31, 2006, was less than $0.04 per share on a fully-diluted basis. If Caneum's Adjusted EBITDA for the year ended December 31, 2006 was less than $0.028 per share, Caneum was required to issue to Barron 1,720,000 preferred shares.

41.     Caneum's Adjusted EBITDA for the year ended December 31, 2006 was $0.01 per share and thus, Caneum was required to issue 1,720,000 preferred shares to Barron.

42.     Caneum has not issued the 1,720,000 shares it owes to Barron pursuant to Article 6.15 of the SPA and its failure to do so constitutes a material breach of the SPA.

43.     Barron is entitled to a judgment in its favor based on Caneum's breach of contract and an order requiring Caneum to issue the 1,720,000 preferred shares to Barron owed under the SPA.

Second Claim For Relief
(Breach of Contract)

44.     Barron repeats and realleges the allegations contained in Paragraphs 1 through 43 as if set forth fully herein.

45.     Barron has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the Registration Rights Agreement.

46.     As set forth above, Caneum was obligated under the Registration Rights Agreement to maintain an effective registration statement covering the commons shares issuable upon conversion of the outstanding shares of the Series A Preferred Stock and the common shares issuable upon exercise of the warrants held by Barron.

47.     It is undisputed that Barron has been denied the use of an effective registration statement for the resale of Barron's Caneum shares since April 1, 2007.

48.     The liquidated damages provision of the Registration Rights Agreement (Article 2.8) requires Caneum to issue 30,000 shares to Barron for every 30-day period that the registration statement remains ineffective.

49.     Under this formula, to date, Caneum owes Barron approximately 210,000 shares.

50.     Caneum has not issued the shares it owes to Barron pursuant to Article 2.8 of the Registration Rights Agreement and its failure to do so constitutes a material breach of the Registration Rights Agreement.

51.     Barron is entitled to a judgment in its favor based on Caneum's breach of contract and an order requiring Caneum to issue the 210,000 shares to Barron owed under the Registration Rights Agreement.

Third Claim For Relief<br>(Breach of Contract)

52.     Barron repeats and realleges the allegations contained in Paragraphs 1 through 51 as if set forth fully herein.

53.     Barron has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the SPA.

54.     As set forth above, Caneum was obligated under the SPA to timely file its required periodic reports with the SEC.

55.     It is undisputed that at various times during 2007, Caneum failed to timely file its required periodic reports with the SEC.

56.    Caneum's failure to timely file its required periodic reports with the SEC constitutes a material breach of the SPA.

57.    Caneum's failure to timely file its required periodic reports with the SEC also caused it to lose its eligibility for its common stock to trade over the OTCBB and slip to the Pink Sheets.

58.    Since Caneum moved to the Pink Sheets, there has been very little reported trading activity in its stock and Barron has lost its ability to resell its shares and, therefore, has been denied the benefit of its bargain with Caneum.

59.    As a result of Caneum's failure to timely file its required reports with the SEC, Barron has been damaged in an amount to be determined at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Barron respectfully requests that this Court enter an Order in its favor against Caneum by:

1)    Entering judgment dismissing the Amended Complaint in its entirety and ordering that Caneum take nothing in this action.

2)    Entering judgment granting Barron's breach of contract claim against Caneum in Barron's First Claim for Relief and ordering Caneum to issue to Barron the 1,720,000 preferred shares due under Article 6.15 of the Preferred Stock Purchase Agreement.

3)    Entering judgment granting Barron's breach of contract claim against Caneum in Barron's Second Claim for Relief and ordering Caneum to issue to Barron the 210,000 shares of Caneum's common stock due under Article 2.8 of the Registration Rights Agreement.

4)    Entering judgment granting Barron's breach of contract claim against Caneum in Barron's Third Claim for Relief and awarding damages to Barron in an amount to be proven at trial.

5)    Ordering Caneum to timely file its required periodic reports with the SEC so that it may be listed on the OTCBB or any other exchange other than the Pink Sheets until Barron has had an adequate opportunity to sell its shares.

6)    Awarding Barron the costs, including reasonable attorneys fees, that it incurs in connection with this action; and

7)    Awarding Barron such other and further relief as this Court deems just and proper.


DATED:    New York, New York
          October 24, 2007

                            DLA PIPER US LLP


                            By _____/S/_____
                            Caryn Schechtman
                            Megan Shea Harwick
                            1251 Avenue of the Americas
                            New York, New York 10020
                            Tel: 212.335.4500
                            Fax: 212.335.4501

                            Attorneys For Defendant Barron Partners LP